McKinney, J.
delivered the opinion of the court.
The complainant, a free man of color, files this bill to have delivered up and restored to him a note for four hundred dollars, made by Amos Richardson and John G. Anthony to S. E. Rose, as the friend and trustee of complainant, due 25th December, 1845, which, the bill alleyiges, he was forced to surrender to the ¡ defendant without consideration, by imprisonment and threats of a criminal prosecution.
At the return term two months were allowed the defendant to putin an answer to the bill. He failed to do so, and judgment pro confesso was entered against him. At the June term, 1847, of the chancery court, at Lawrenceburg, the cause was heard, and a decree made for the complainant, from which the defendant appealed to this court.
It appears from the i’ecord, that after the decree was pronounced the defendant presented an answer, accompanied with an affidavit excusing the delay, and asked to have the decree and judgment pro confesso set aside, and to be permitted to file the answer. This application was refused by the chancellor, on the ground mainly, that the answer substantially admitted the equity of the bill, and, therefore, could avail the defendant nothing.
It is argued by the defendant, that the decree of the chancellor is erroneous, and should be reversed on several grounds.
1st. Because of the refusal of the chancellor to receive the answer of the defendant. In this, we think, there was no er- *187 tor. The answer offered to be filed contains no matter of de-fence sufficient to enable the defendant to resist the relief sought by the bill, and, therefore, it was properly rejected.
2dly. It is insisted, that, from the face of the bill, it appears that the proceedings of the county court of Lawrence county for the emancipation of the complainant were void; that he is still a slave, and, therefore, cannot maintain this bill.
From the allegations and proof, it appears that in the year 1835 the complainant purchased his freedom from Dixon C. Topp, his former owner, at the price of $1000. Topp wag, non-resident, and the complainant at the time of the^rareh^s^ was residing with Thomas Martin, in Giles cour state. He had a wife and child, who were slaves, said county, whose freedom he also wished to purclj he desired to remain in this state until, from the proce labor, he could realize money enough to enable him But as he could not remain in this state if emancipated, it was mutually agreed between the complainant and said Topp and Martin, in order that he might accomplish the object he had in view, without the violation of the law, that his emancipation should be postponed for a time, and that Topp should make a conveyance of complainant to Martin, in trust, Jlo permit him to labor for himself, and to reap the benefit of his earnings, until such-time as he should desire to be emancipated; and-a conveyance to thjs effect was accordingly executed. Some years afterwards, the complainant having removed from Giles county, and Martin being unwilling to remain longer responsible for him, executed a conveyance, or bill' of sale, of complainant and his wife, (the complainant having purchased her freedom in the mean time,) to one M. H. Buchanan, of Lawrenceburg, which shows upon its face the trust in favor of complainant and his wife; that he Martin had no claim to their ownership; that Buchanan had “consented to take charge of *188 them,” and purports to transfer no other interest in them than was vested in Martin by the bill of sale from Topp. The bill ¿Hedges that Buchanan, in the latter part of the year 1843, or early in 1844, when about to remove, denied having ever accepted said trust; and in writing, on the back of the bill of sale made to him by Martin, disclaimed his acceptance thereof, and all right, legal or equitable, to the complainant and his wife; and that Buchanan never, at any time, claimed to have any right to the labor or services of complainant and wife, or the profit thereof. The bill further alledges, that in the spring of the year 1845, the complainant was desirous of removing from this state; and for the purpose of enabling himself and wife to obtain their emancipation, said Martin conveyed them to John Stephenson, by bill of sale bearing date 28th March, 1845, and on the 7th day of April ensuing, said Stephenson presented a petition to the county court of Lawrence county for their emancipation, which was granted; and they were in due form emancipated and declared free, and bond with security given for their removal from this state; they shortly after-wards removed to the State of Illinois.
The record of the emancipation is exhibited with, and forms part of the bill; the bill of sale from Martin to Buchanan is also incorporated in the bill; but the disclaimer or relinquishment, alledged to have been made by Buchanan', is not produced, nor proved. Upon this state of facts it is argued for the defendant, that inasmuch as, under our law, there is no intermediate, or middle state, betweezi freedom and slavery, the legal effect of the conveyance of the complainant to Buchanan, was to make the former the slave of the latter, and that he still remains such: and, therefore, his emancipation by the county court of Lawrence county, at the instance of Stephenson, was void, as under the act of 1801, it could only take place on the application of owner of the slave.
*189 We cannot assent to the correctness of this argument. By the common law, the master by his own act might manumit his slave by parol; and that manumission would even be implied from the acts and conduct of the master. 2 Black. Com. 95. In this state, by virtue of statutory prohibition, emancipation cannot take place without the consent of the government; nevertheless, the owner may part with his right of property in the slave, as fully as at common law, and thereby vest him with an imperfect right to freedom. This may be done by deed, or will, or even by parol contract with the slave; and if in either of these modes the master has parted with his right, nothing remains to be done tó entitle the slave to his freedom, but the assent of government. But although the right of the slave to freedom is imperfect and incomplete, until the assent of the state has been manifested by the proper tribunal, constituted by law and entrusted with the discretionary power of giving such assent, yet the legal character and condition of the slave is changed. His relations to his former master and to the community, are likewise changed. By the act of the master, imparting to him an imperfect right to freedom, he ceases to be in the state and condition of slavery; ceases to have an owner, or master, within the meaning of the law. And not only may the master, by direct contract with the slave, confer upon him aii immediate right to present freedom : he may likewise make a conveyance to a third person, in the character of trustee for the slave, as held in the case of Elias vs. Smith, 6 Humph. 33, thereby postponing the enjoyment of the right until the happening oí some future contingency. And in either case, should the former owner or trustee fail or refuse to make application to the proper tribunal for the assent of the state to the emancipation, it may be made by any other person, legally competent to do so, in the character of next of friend of the person seeking to be emancipated. *190 All that the law deems essential, upon such application being-made, is satisfactory proof of the fact, that the proper owner of the slave has voluntarily parted with Ms right of ownership ; and if this be clearly established, the emancipation will be declared, if, in the opinion of the court, consistent with the Interest and policy of the state. The matter as to the person by whom the application shall be made, whether the former owner, the trustee, or one who stands in the relation merely of next friend, is regarded as mere form, and wholly unimportant. The only reason for requiring the application to come from the master, or owner, would be, that his consent to the emancipation might be thereby manifested; but if such consent is otherwise fully proved, the object of the law is attained. It follows, therefore, that the validity of the emancipation in this case, is not affected by the omission .either of Topp, the former owner, or of Buchanan, the trustee, to present the petition to the county court, to have the complainant emancipated. The fact, that Topp had parted with his right voluntarily and for a valuable consideration, was fully proved, and likewise his assent to the emancipation. And the interest of Buchanan, if such it may be called, was a mere naked trust, subject to be defeated at the pleasure of complainant, and ceased to exist, whenever he deemed it proper to assert his right to emancipation. Buchanan was not the “owner” of the complainant, even in the literal sense of the statute. If, However, it was admitted in this case, that the proceedings of the county court was erroneous, it would be of no avail to the defendant. The settled doctrine in cases of emancipation is, that the proceedings of the tribunal entrusted by law to give the assent of the state cannot be impeached, when collaterally brought in question, unless upon their face they be absolutely void.
Third. It is insisted that no decree can be made in favor *191 of the complainant in this case, because the note in question was given for the services of complainant before his emancipation, and, therefore, could not belong to him; and because the delivery of said note to the defendant, was likewise before his emancipation. We think otherwise. The consideration of the note was money due to the complainant for his labor and services after the period when, by the consent of his former master, and also of his trustee, he was rightfully entitled to receive and enjoy the fruits of his labor. In equity, neithef the master nor trustee would be permitted to assert a claim to the note, or to the money due thereon, and much less will the defendant be heard to set up such claim on their behalf. Why should the complainant be denied the right, after his emancipation, to recover] the note in question, if in the interval between the time when complainant’s right of freedom accrued and its final consummation, the defendant had wrongfully deprived him of his liberty, and exacted from him his labor, his right, after emancipation, to maintain an action to recover damages for the injury, and also for the value óf his services^ would not be questioned? In such case, his freedom, by relation, would be held to extend to the time when the right first accrued; so in the present case, it will be held to relate back, to entitle him to recover the proceeds of his labor wrongfully extorted from him during such interval. This objection, we think, does not very well become the defendant; he séems to have regarded the note, in the transaction in question, as the property of the complainant, and treated him as competent to make an agreement for its transfer, and cannot, under the circumstances of this case, be heard to alledge the contrary. We think the complainant is entitled to have the note restored to him, or, on failure of the defendant to do so, to have a decree for the amount due thereon, with interest from the time it fell due. The decree- of the chancellor will be affirmed with costs*